**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **AIDA PEREZ** *et al.*, **on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br>-against-<br><br>**EQUITY PRIME MORTGAGE, LLC,**<br><br>**Defendant.** | **Case No. 1:25-CV-10841-MJJ** |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**

Plaintiffs Aida Perez, *et al.*, on behalf of themselves and all others similarly situated (together, "Plaintiffs"), by and through their attorneys, Shavitz Law Group, P.A. and Fair Work, P.C., hereby file this Brief in Support of Motion for Sanctions (the "Motion").

Respectfully submitted this 14th day of March, 2026, by:

*/s/ Paolo C. Meireles*
Paolo Meireles*
Tamra Givens*
SHAVITZ LAW GROUP, P.A.
622 Banyan Trail, Suite 200
Boca Raton, FL  33431
(561) 447-8888
pmeireles@shavitzlaw.com
tgivens@shavitzlaw.com

Hillary Schwab (BBO# 666029)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3261
hillary@fairworklaw.com

**Pro Hac Vice* Admitted

**Attorneys for Plaintiffs and the Putative Collective and Class**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................iii

I.     RELEVANT FACTS AND PROCEDURAL POSTURE........................................ 1

II.    ARGUMENT AND ANALYSIS............................................................................. 7

    A.     Applicable Standards ................................................................................. 7

    B.     This Court Should Impose Sanctions Given Defendant's Refusal to Comply with Federal Law and this Court's Orders................................................................. 9

    C.     Suggested Sanctions.................................................................................. 13

III.   CONCLUSION..................................................................................................... 15

CERTIFICATE OF COMPLAINCE WITH LOCAL RULE 37.1(B) ......................................... 17

CERTIFICATE OF SERVICE ............................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AngioDynamics, Inc. v. Biolitec, Inc.*,
  966 F. Supp. 2d 71 (D. Mass. 2013) ...........................................................................14

*Carranza v. Unique Auto Detail LLC, Civil Action*
  No. 15-14020-FDS, 2016 U.S. Dist. LEXIS 206061 (D. Mass. Nov. 1, 2016) ................ *passim*

*Hawkins v. Dept. of Health & Human Servs.*,
  665 F.3d 25, 32 (1st Cir. 2012) ..................................................................................14

*O'Donnell v. Robert Half Int'l, Inc.*,
  429 F. Supp. 2d 246 (D. Mass. 2006) .........................................................................12

**Statutes**

29 U.S.C. §§ 201 .........................................................................................................1

29 U.S.C. § 216 ........................................................................................................13

**Other**

Fed. R. Civ. P. 16 ........................................................................................................1

Fed. R. Civ. P. 23 ...................................................................................................13, 14

Fed R. Civ. P. 26 ...................................................................................................1, 2, 3

Fed. R. Civ. P. 34 .....................................................................................................5, 9

Fed. R. Civ. P. 37 ................................................................................................. *passim*

L.R., D. Mass 37.1 .....................................................................................................17

## I.  RELEVANT FACTS AND PROCEDURAL POSTURE

1.      Plaintiffs filed their Collective and Class Action Complaint ("Complaint"), alleging that they and others similarly situated were misclassified as employees exempt from the overtime protections of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and analogous state wage and hour law.  ECF No. 1.

2.      On November 19, 2025, the parties participated in their Fed R. Civ. P. 26(f) conference.  Declaration of Attorney Paolo C. Meireles in Support of Plaintiffs' Motion to Compel Discovery Responses ("Meireles Decl.") at ¶ 3.

3.      Relatedly, on December 3, 2025, the parties filed their Joint Statement pursuant to Fed. R. Civ. P. 16(b) and 26(f) ("Joint Statement") in which they agreed, as subsequently adopted by the Court, that discovery would proceed in a "bifurcated" fashion, with the first phase of the case focused on "discovery into the nature of the claims of the individually named Plaintiffs and any opt-in plaintiffs who may join this action prior to the end of this first phase (including for example, their job duties, the work they claim to have performed, and the hours they claim to have worked), as well as conditional certification discovery directed toward the issue of whether Plaintiffs' FLSA claims can be conditionally certified as a collective action."  ECF No. 27 at p. 3-4; ECF No. 29 and 30; *see also* Meireles Decl. at ¶ 3.

4.      On November 19, 2025, shortly after the Parties' Fed. R. Civ. P. 26(f) conference, Plaintiffs served on Defendant their First Set of Interrogatories ("Rogs"), attached hereto as **Exhibit 1**, and First Set of Requests for Production ("RFPs") (together with Rogs, "Plaintiffs' Discovery"), attached hereto as **Exhibit 2**.[1]  Meireles Decl. ¶ 4.

5.      Defendant's responses to Plaintiffs' Discovery were due on Friday, December 19,

---

[1]      All Exhibits referenced herein are attached to the Meireles Decl., filed herewith.

2025.  Meireles Decl. at ¶ 5.  Defendant failed to timely respond to Plaintiffs' Discovery, and failed

to seek an extension of same in advance of the December 19, 2025 deadline.  *Id.*

       6.      On December 23, 2025, the undersigned e-mailed Defendant's counsel, writing:

> Discovery responses were due this past Friday, December 19.  We have not received anything.  Please advise.

*Id.* at 6; **Exhibit 3** (copy of e-mail correspondence between the parties) at p. 6.  Defendant did not

respond to Plaintiffs' e-mail.

       7.      On December 30, 2025, Plaintiffs' counsel again wrote Defendant's counsel, stating:

> We didn't receive a response on the below.  Please advise what works to confer on the outstanding discovery.

Meireles Decl. at ¶ 7; Exhibit 3 at p. 6.  Defendant did respond to this second e-mail, and the parties

conferred on the outstanding discovery via telephone on January 9, 2026.  Meireles Decl. at 7;

Exhibit 3 at pp 3-6.

       8.      During the January 9 conferral, Defendant's counsel represented that (i) responses to

the Rogs would be served by end of that day, January 9, 2026; and (ii) responses to the RFPs,

including responsive documents, would be served the following week.  Meireles Decl.  at ¶ 8.  The

undersigned reminded Defendant that in the future, requests for extension of deadlines should be

sought in advance of the deadline; particularly here as the deadline to respond to discovery had come

and gone several weeks earlier.  *Id.*  Defendant's counsel confirmed that she understood.  *Id.*

       9.      Notwithstanding the conferral, Defendant failed to respond to the Rogs by close of

business on January 9, 2026, and failed to respond to Plaintiffs' RFPs or produce responsive

documents during the following week, as promised.  *Id.* at ¶ 9.

       10.     On January 16, 2026, Plaintiffs' counsel e-mailed Defendant's counsel stating:

> Please provide all information responsive to plaintiffs' interrogatories and requests for production (including all documents) by 4 pm ET Monday, or will need to

> proceed with filing our motion.

*Id.* at ¶ 10; Exhibit 3 at p. 3.

11.     Defendant never produced any discovery responses.   Meireles Decl. at ¶ 11. Accordingly, on January 21, 2026, Plaintiffs filed their Motion to Compel Discovery Responses ("Motion to Compel").  ECF No. 31.

12.     Pursuant to Local Rule 37.1(c), Defendant's opposition to the Motion to Compel was due by February 4, 2026.  Defendant never filed its opposition, nor did it provide discovery responses, by the February 4, 2026 deadline.  Meireles Decl. at ¶ 12; ECF No. 32 (Plaintiffs' Notice of Defendant's Non-Opposition to Plaintiffs' Motion to Compel Discovery Responses).

13.     By February 11, 2026, Defendant had still yet to file an opposition to Plaintiffs' Motion to Compel, or otherwise respond to discovery.  Meireles Decl. at ¶ 13.  On that date, the Court entered its Order, "grant[ing] Plaintiffs' Motion to Compel[,] deem[ing] Defendant's objections waived[, and ordering] Defendant [to] respond to Plaintiffs' Discovery Requests within fourteen (14) days of the Court's order," i.e., by February 25, 2026.  ECF No. 33.

14.     By February 26, 2026, the day after production was due by Court order, Plaintiffs were yet to receive anything from Defendant.  Meireles Decl. at ¶ 14.  Plaintiffs wrote to Defendant that same day, February 26, 2026, stating:

> Discovery responses were due yesterday, February 26, 2026.  We have not received anything.  Please advise what works within the next week to confer.

Exhibit 3 at p. 2.

15.     Defendant responded on February 27, 2026, stating:

> Paolo – apologies for the late response, my email was apparently having issues.  You should have gotten a drop box link – I will resend when I am back in front of my actual computer.

Exhibit 3 at 2.  Plaintiffs' counsel immediately responded, stating:

> Nothing received. Please advise what works for a conference.

Exhibit 3 at 1.

16.     On March 2, 2026, Plaintiffs were still yet to receive any production.  On that same day, Defendant wrote:

> Paolo – did you get the drop box link?  Let me know. I'm in and out due to a personal matter today, but available Wed.

Exhibit 3 at 1.  Plaintiffs' counsel responded, stating:

> We did not.

Exhibit 3 at 1.

17.     The next evening, at 7:20 pm on March 3, 2026, Defendant finally emailed Plaintiffs' counsel a Dropbox link with an *extremely* limited and incomplete production of documents consisting only of essentially: (i) personnel files for seven out of eleven Plaintiffs and Opt-in Plaintiffs; (ii) an employee handbook; (iii) some, but apparently not all, job descriptions at issue; and (iv) and an organizational chart.  Meireles Decl. at ¶ 17.  Moreover, despite claiming on March 2, 2026, that the Dropbox link had already been provided uploading the (deficient) production (*see supra*), Dropbox reflects that the production, though incomplete as it was, was only uploaded in the late hours of March 3, 2026.  *See* **Exhibit 4** (10:21 am, March 4, 2026, screenshot of Defendant's Dropbox upload reflecting the documents had only been uploaded 15 hours earlier, or 7:21 pm on March 3, 2026, belying Defendant's claim that the link weas provided on March 2, 2026 or earlier – seemingly, yet *another* misrepresentation regarding the status of discovery responses).

18.     On March 4, 2026, the parties conferred regarding the incomplete production, outstanding written responses, and Defendant's (lack of) compliance with the Court's Order on the Motion to Compel.  Meireles Decl. at ¶ 18.  **Among other things**, Defendant **assured** Plaintiffs:

> a.  RFP written responses had already been uploaded to the Dropbox (in fact, the

RFP responses were yet to be produced at the time of that representation was made, *see infra*). The responses did not assert any objections, and noted that responsive documents "would be" produced. Defendant also agreed to provide supplemental responses confirming that the production had been completed and that no responsive documents were being withheld with respect to each and every request;

b.  Complete, verified Rogs responses would be produced by the end of the day;

c.  The missing four personnel files would be produced by the end of the day;

d.  A responsive California-based complaint would be produced by the end of the day;

e.  A complete "class list" would be produced by close of business the following day;

f.  Responsive e-mail boxes for Plaintiffs and Opt-in Plaintiffs, outstanding job descriptions, Plaintiffs and Opt-in Plaintiffs' pay records, additional versions of the employee handbook, policy documents, and additional responsive complaints (both formal and informal), would be produced, "if any";

g.  Defendant would confirm with its IT department that requested electronically stored information did not exist and/or otherwise pull and produce same; and

h.  Defendant would confer internally and advise what was searched and the manner of search to ensure all responsive documents were collected and produced.[2]

---

[2]    During conferral, Defendant's counsel claimed (i) Defendant has no electronically stored information showing when putative collective members (many of whom worked remotely) accessed Defendant's systems and software (to show time worked); (ii) Defendant has no internal written policies or procedures responsive to *any* of Plaintiffs' requests other than an employee handbook; and (ii) Defendant "does not use e-mail much," and so there were no responsive e-mails to produce in response to *any* of Plaintiffs' requests. Meireles Decl. at ¶ 18 n. 2. However, Defendant's counsel was unable to advise what was searched or the manner of search, including whether any e-mails were actually searched and what, if any, keywords were used, casting significant doubt on whether a company of Defendant's size has performed an adequate, legally sufficient search of responsive documents and produced same in compliance with this Court's Order, particularly given the numerous misrepresentations regarding the status of discovery (*see supra* and *infra*). Meireles Decl. at ¶ 18 n. 2. It seems particularly dubious to suggest Defendant, in this day and age, does not utilize e-mails "very much" and so, for that reason, there are no responsive e-mails to produce; particularly where Defendant is, as of yet, unable or unwilling to provide supplemental RFP responses as promised stating unequivocally that a legally sufficient search was performed, all responsive documents were produced, and no responsive documents were withheld, as required by Fed. R. Civ. P. 34. To the contrary, out of 25 RFPs, Defendant's "initial" RFP responses indicate that for 23 RFPs it "will produce" responsive documents (suggesting it has in responsive documents), for one RFP Defendant noted it was "not aware of any responsive documents," and for only two RFPs Defendant noted it had "no" responsive documents. *See* **Exhibit 6** (a true and correct copy of Defendant's initial RFP responses, served electronically on March 3, 2026 but which shockingly includes a "certificate of service" reflecting a February 25, 2026 service date despite Plaintiffs never having received any such production, *see supra*)). Yet, promised documents responsive to the vast majority of Plaintiffs' RFPs remain outstanding. Meireles Decl. at ¶ 20. It is clear Defendant has been less than forthcoming.

Meireles Decl. at ¶ 18.  Attached hereto as **Exhibit 5** is a true and correct copy of the post-call summary e-mail Plaintiffs' counsel sent to Defendant.[3]

19.    By the end of the day on March 4, 2026, none of the promised production had been made.  Meireles Decl. at ¶ 19.  In fact, the only thing produced was the initial RFP responses which Defendant claimed had already been produced (*see supra*), which had been uploaded by Defendant to the Dropbox only **after** the parties March 4, 2026 conferral (wherein Defendant claimed it had **already** been produced).  Meireles Decl. at ¶ 19; Exhibit 5 at p. 1 ("[W]e can see from the dropbox that the purported "initial" RFP responses were uploaded yesterday after our call.").

20.    In fact, as of the date of filing the instant Motion, beyond the "initial" RFP responses that Defendant claimed had already been produced (which had not been at the time the representation was made), nothing else has been produced.  Meireles Decl. at ¶ 20.  Rogs responses have not been produced; the supplemental (and required) RFP response have not been produced; outstanding personnel files have not been produced; the California-based complaint documents have not been produced; the collective list has not been produced; Plaintiffs' and Opt-in Plaintiffs' e-mail boxes have not been produced;  additional versions of the employee handbook and/or *any* policy documents have not been produced; responsive complaints (formal and informal) have not been produced; and no information regarding what was searched and the manner of search (whether electronically stored information, internal documents, and/or e-mails) has been provided.  Meireles Decl. at ¶ 20.

21.    In short, as has been the theme in this case, Defendant has promised productions time and time again, only to intentionally withhold materials, including those that it claims are otherwise

---

[3]    Plaintiffs' March 5, 2026 summary e-mail noted, "[i]f you disagree with any aspects of this summary, please advise by close of business Friday, March 6, 2026.  Otherwise, we will assume this summary is accurate."  Exhibit 5 at p. 2.  As of the date of this filing, Defendant is yet to provide any objection and/or otherwise respond to the March 5, 2026 summary, other than to advised on March 5, 2025 that Defendant's counsel was "[t]urning back to my emails now and will respond.  Exhibit 5 at p. 1; Meireles Decl. at ¶ 18 n. 3.  No response has been received.  *Id.*

ready for production (such as the Rogs responses it has been promising since January 9, 2026), in violation of the Federal Rules and this Court's Order.

22.    To date, Defendant has not timely sought any extension of time (Meireles Decl. ¶ 21); has ignored Plaintiffs' efforts to resolve this matter without Court intervention, offering only empty promise after empty promise; and has disregarded its requirements to timely respond to discovery under applicable federal law despite Plaintiffs' repeated reminders.  As it relates to its discovery obligations, Defendant has utterly disregarded the Federal Rules of Civil Procedure, the Local Rules of the Federal District Court of Massachusetts, and the Order of this Court.

23.    Accordingly, this Court should enter an Order: (i) imposing sanctions, including but not limited to holding Defendant in contempt, certifying Plaintiffs' proposed collective and classes, striking Defendant's Answer and defenses, and ordering Defendant to compensate Plaintiffs for fees and costs incurred to date associated with seeking outstanding discovery through conferrals, filing of Plaintiffs' initial Motion to Compel and preparing and filing the instant Motion; and (ii) granting any other relief that this Court may deem just and proper.

## II. ARGUMENT AND ANALYSIS

### A. <u>Applicable Standards</u>

"If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A).  "A district court has 'broad discretion' to impose sanctions under Rule 37[.]"  *Carranza v. Unique Auto Detail LLC*, Civil Action No. 15-14020-FDS, 2016 U.S. Dist. LEXIS 206061, at *7 (D. Mass. Nov. 1, 2016) (quoting *United States v. Klimavicius*, 847 F.2d 28, 31 (1st Cir. 1988)).  "[W]hen 'a litigant is confronted by an obstructionist adversary,'" significant sanctions upwards to the "entry of a default judgment 'may present 'a useful remedy.'"  *Carranza*, 2016 U.S. Dist. LEXIS 206061, at *7

(quoting *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 436 (1st Cir. 2015) (quoting *Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011)).

In fashioning appropriate remedies, Courts may consider, among other things:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii)   striking pleadings in whole or in part;
(iv)    staying further proceedings until the order is obeyed;
(v)     dismissing the action or proceeding in whole or in part;
(vi)    rendering a default judgment against the disobedient party; or
(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

When considering the appropriate remedies and sanctions,

Courts should evaluate the appropriateness [of] particular sanctions under Rule 37 on a case-by-case basis, in light of the totality of the circumstances. . . . To help determine whether a sanction is appropriate, the First Circuit has articulated a non-exhaustive list of factors for district courts to weigh. Those factors include both procedural and substantive elements that help separate good faith attempts to comply with discovery obligations from deliberate, bad faith refusals to do so. Procedural considerations include whether the offending party was given sufficient notice and opportunity to explain its noncompliance or argue for a lesser penalty. Substantive factors include: (1) the severity of the violation; (2) the legitimacy of the party's excuse; (3) the repetition of violations; (4) the deliberateness of the misconduct; (5) any mitigating excuses; (6) any prejudice to the other side and the court's operations; and (7) the adequacy of lesser sanctions. Applying these factors, courts must balance the desirability of resolving cases on the merits against the importance of 'the orderly and efficient administration of justice.

*Carranza*, 2016 U.S. Dist. LEXIS 206061, at *7-8 (summarizing the First Circuit's list of factors when considering sanctions) (internal citations and quotations omitted).

Finally, "in addition [to the imposition appropriate sanctions,] the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or

other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Here, given the circumstances and procedural history, it would be an undeniably appropriate exercise of this Court's authority to impose sanctions to address this intentional misconduct and disregard of the rule of law, including but not limited to holding Defendant in contempt, certifying Plaintiffs' proposed collective and classes, striking Defendant's Answer and defenses, and ordering Defendant to compensate Plaintiffs for fees and costs incurred to date associated with seeking outstanding discovery through conferrals, filing of Plaintiffs' initial Motion to Compel and preparing and filing the instant Motion.

**B. This Court Should Impose Sanctions Given Defendant's Refusal to Comply with Federal Law and this Court's Orders.**

As detailed in the procedural history, *supra*, Defendant has chosen to continue to disregard every opportunity to comply with its discovery obligations and to submit to this Court's authority. First, Defendant refused to timely respond to discovery. Then, Defendant failed to respond to Plaintiffs' Motion to Compel. Finally, Defendant chose to ignore the Court's Order granting Plaintiffs' Motion to Compel. Every step of the way, including through today, Defendant has intentionally misrepresented the status of its discovery efforts, withheld responsive (and Court Ordered) discovery, and has made a concerted effort to obstruct Plaintiffs and delay this matter. It was only at Plaintiffs' insistence that Defendant finally made its **woefully inadequate** production of:

1. an "initial" RFP response (which Defendant admits fails to indicate for each RFP that a legally sufficient search has been completed, all responsive documents produced, and nothing withheld (as required by Fed. R. Civ. P. 34(b)(2)));

2. an employee handbook;

3. seven out of eleven Plaintiff and Opt-in Plaintiff personnel files;

4. a limited number of job descriptions; and

5. an organizational chart.

Defendant is still yet to produce the vast bulk of discovery responses to Plaintiffs' requests, including:

1. **any** Rogs responses (despite claiming since January 9, 2026 that they were ready to produce);

2. a supplemental RFP response (reflecting all responsive documents have been produced and nothing has been withheld for each RFP); and

3. countless categories of documents – some of which Defendant admits it has in its possession and is prepared to produce but simply has not done so, including but not limited to:

   a. Witness and putative collective member contact information;
   b. Plaintiffs' and Opt-in Plaintiffs' e-mail boxes;
   c. Additional job descriptions;
   d. Personnel files for the remaining four Plaintiffs and Opt-in Plaintiffs yet to be produced; and
   e. A prior, California-based wage and hour complaint implicating some of the issues raised in this matter.

4. Other categories of documents Defendant's initial RPF responses indicate it "will" produce, but which Defendant now incredulously claims it does not possess despite being unable or unwilling to disclose what was searched, the manner of the search, and whether all responsive documents have been produced and none withheld, in writing, as required by the Federal Rules, such as:

   a. full pay records for Plaintiffs and Opt-in Plaintiffs, particularly after the purported transfer to a new payroll vendor which Defendant admitted during conferral has more access to such records;
   b. job policies and procedures applicable to Loan Employees (e.g., hours worked/expected policies; training documents; performance evaluation and standards documents; orientation materials; compensation plans; etc.);
   c. internal analysis of employees' time worked and duties performed (if any);
   d. prior complaints (formal or informal) regarding wage and hours issues from outside of the liability period;
   e. documents (including communications) regarding classification decisions, whether the original classification as exempt, maintaining that exempt classification, and/or the reclassification;
   f. electronically stored information implicating time worked (such as ingress and

10

        egress from Defendant's computer systems);

    g.   internal e-mail correspondence responsive to Plaintiffs' RFP requests; and

    h.   and any other documents regarding Defendant's affirmative defenses.

Defendant cannot be permitted to continue to intentionally delay this matter and disregard the Federal Rules and this Court's Orders, particularly where Defendant's failure implicates something as basic as a response to Interrogatories (which Defendant claims it has had ready to produce since January 9, 2026, yet has simply refused to produce). This continued refusal to comply prejudices Plaintiffs' ability to prosecute these claims, unnecessarily compounds these proceedings, forces Plaintiffs to needlessly incur fees and costs, and requires this Court to commit resources to addressing these matters time and time again.

Considering the First Circuit's list of non-exhaustive factors, the balance of these factors weigh heavily in favor of imposing sanctions. The severity of Defendant's violations are significant and repeated. Defendant disregarded several reminders to respond to discovery at the outset, then misrepresented that discovery would be produced by close of business requiring Plaintiffs to file their Motion to Compel. Now, Defendant refuses this Court's authority by continuing to withhold discovery, despite the additional opportunities Plaintiffs afforded. Through today, Defendant has continued in its strategy of mispresenting the state of discovery and its intension to comply. Shockingly, Defendant is without **any excuse** for its refusal to comply with the Federal Rules and blatant disregard of this Court's Order, as well as its repeated misrepresentations as to when discovery would be produced. This conduct, now having wasted **months**, is undoubtedly a deliberate attempt to delay these proceedings, and is causing significant prejudice to Plaintiffs' ability to prosecute their claims through certification of the collective claims and a merits decision, particularly given Plaintiffs' deadline to move for collective certification is fast approaching.[4]

---

[4]      The final consideration – the adequacy of lesser sanctions, is addressed *infra* at Section II.C.

Severe sanctions are undoubtedly appropriate here.

When faced with eerily similar circumstances, Courts in this District have readily imposed swift and severe sanctions. For example, in *Carranza v. Unique Auto Detail LLC*, Civil Action No. 15-14020-FDS, 2016 U.S. Dist. LEXIS 206061 (D. Mass. Nov. 1, 2016), plaintiffs sought unpaid wages as a result of defendant's alleged misclassification. *Id.* at *1. During the course of discovery, defendants failed to produce documents and answer interrogatories, resulting in the Court compelling production. *Id.* at *2-3. Notwithstanding the order, "defendants [ ] continued to ignore all discovery requests and deadlines." *Id.* at *4. In response, defendants argued they had difficulty completing certain requests, defendant's counsel was out of the office during the response period, and that defendants sent an e-mail to plaintiffs seeking to confer on these issues although plaintiffs had no record of such an e-mail nor was defendant able to produce a copy of the e-mail to the court to support its statements. *Id.* *5. Defendants further contended that while late, they did provide some discovery responses to plaintiffs, though responses were incomplete and thus, not in full compliance with the Court's original order compelling production without objections. *Id.* *6.

On that record, which is nearly a carbon copy of the procedural posture here, the *Carranza* Court found "[t]he case represents a fairly extreme example of a party flouting its discovery obligations." *Id.* at *8. Ultimately, on a nearly identical record, the *Carranza* Court granted the most severe sanction—which notably, is in excess of the sanctions Plaintiffs currently seek herein—the entry of default judgment as well as fees and costs incurred. *Id.* at *8.

Indeed, other courts have regularly imposed sanctions where a party's conduct is far less egregious than that of the *Carranza* defendants or Defendant here. For example, in *O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246, 252 (D. Mass. 2006), plaintiffs were sanctioned for failure to serve responses to requests for production following the Court's order, overruling

plaintiffs' argument that defendant failed to provide an updated document request tracking the Court's order compelling a narrowed set of discovery.

Here, Defendant's repeated and flagrant disregard of the Federal Rules and this Court's Orders warrants the imposition of sanctions.

## C. **Suggested Sanctions.**

Rather than an immediate default judgment such as in *Carranza*, Plaintiffs request lesser sanctions at this time given that they seek to certify a collection and class action and to obtain a judgment on behalf of similarly situated employees subject to Defendant's unlawful wage practices  Therefore, at this time, Plaintiffs respectfully request that this Court impose the following sanctions:

(i)     Treating as contempt of court the failure to obey the Court's Order;

(ii)    Pursuant to 29 U.S.C. § 216(b), granting collective action certification of Plaintiffs' proposed collective of all current and former employees of Defendant working as "Loan Employees"[5] throughout the United States during the time period from June 30, 2022 through present, particularly given the parties' agreement to bifurcated discovery and this first phase—which Defendant has readily sought to obstruct and delay—was to be focused on discovery necessary for certification of the collective (ECF No. 27 at p. 3-4; ECF No. 29 and 30; *see also* Meireles Decl. at ¶ 3);

(iii)   Pursuant to Fed. R. Civ. P. 23, granting class action certification of Plaintiffs'

---

[5] "Loan Employees" is defined as all exempt-classified Loan Openers, Loan Closers, and Loan Processors (a/k/a Account Managers), however variously titled.  During conferral Defendant provided confirmation of the titles it had intended to produce as part of the definition of "Loan Employees."  Those titles include overtime-wage exempt-classified: account executives wholesale; account executives; account managers wholesale; account managers; branch disclosure specialists; broker success analysts; broker success analyst team leads; closers; collateral document specialists; customer support representatives; disclosure desk; disclosure desk administrators; FHA specialists; final document specialists; fulfillment document specialists; funders; government insurance leads; government insuring specialists; government securitization specialists; jr. account executives; loss mitigation coordinators; operations assistants; pipeline support specialists; post closers; processing assistants; processing assistants; processing support specialists; processors; renovation specialists; retail MLO supports; trailing doc specialists; underwriters; underwriting assistants; wholesale account manages; wholesale account managers; wholesale administrator; wholesale closer; wholesale disclosure desk; wholesale operations support specialist; wholesale operations support specialists II; wholesale operations support specialists III; and wholesale pipeline managers.  Meireles Decl. ¶ at 18 n. 1.  Some of these job titles had already been reflected in the limited job descriptions Defendant produced (*see supra*), otherwise employees holding these titles were to be included in the class list that was promised, and as of today is yet to be produced.  Meireles Decl. ¶ at 18 n. 1.  Accordingly, any certification should include employees holding any of these titles.

proposed New Jersey and New York class actions of all Loan Employees in those states who worked for Defendant at any time from June 30, 2019 through present;

(iv)    Pursuant to Fed. R. Civ. P. 23, granting class action certification of Plaintiffs' proposed Massachusetts class action of all Loan Employees in Massachusetts who worked for Defendant at any time from June 30, 2022 through present;

(v)    Striking Defendant's answer, to the extent it is inconsistent with the allegations in the complaint and presents defenses; and

(vi)    Awarding Plaintiffs their attorneys' fees and costs for work expended on discovery conferrals with Defendant to address these matters, Plaintiffs' Motion to Compel, and the instant Motion.

Plaintiffs believe these sanctions are narrowly tailored to the prejudice caused by Defendant's actions, and run short of a full "merits sanction" imposing a default judgment, as was imposed in *Carranza*.

First, the Court should find Defendant in contempt for intentional refusal to comply with its Order without adequate justification, as permitted by Fed. R. Civ. P. 37(b)(2)(A)(vii).[6]

Second, given the upcoming deadlines and the delays to date, Plaintiffs are unlikely to be in a position to have all written and document discovery needed and subsequent depositions completed (and certainly not any discovery needed to potentially bring in experts, which are required to be disclosed by March 31, 2026 [ECF No. 30]) by the conditional certification deadline. For that

---

[6]    Findings of contempt or meant to "coerce compliance rather than to punish past noncompliance." *AngioDynamics, Inc. v. Biolitec, Inc.*, 966 F. Supp. 2d 71, 73 (D. Mass. 2013) (citing *Hawkins v. Dept. of Health & Human Servs.*, 665 F.3d 25, 32 (1st Cir. 2012)). Given discovery remains outstanding, it would be an appropriate exercise of the Court's authority to find Defendant in contempt to coerce compliance with the Court's outstanding Order [ECF No. 33] in addition to the other sanctions requested herein, to address prior (and ongoing), repeated non-compliance.

In that regard, courts find parties in contempt when it is demonstrated that "(1) the alleged contemnor had notice of the order; (2) the order was clear and unambiguous; (3) the alleged contemnor had the ability to comply with the order; and (4) the alleged contemnor violated the order." *Hawkins*, 665 F.3d at 31 (internal citations and quotations omitted). All of these elements are met here. Moreover, Defendant's noncompliance is particularly egregious when considering the number of times Defendant has represented discovery would be produced by close of business (such as the outstanding Rogs responses, personnel files, collective list, and California-based complaint, addressed *supra*), but then simply refused to do so. Undoubtedly, Defendant has notice of the Order via ECF notification, the Court's Order was clear, Defendant admits it was able to comply, but as of this filing, has simply and inexcusably refused to do so.

reason, it would be reasonable to certify the collective and classes as a sanction for Defendant's conduct.

Third, Defendant's withholding of documents and discovery, including those necessary to address Plaintiffs' and Opt-in Plaintiffs' individual claims (*see* ECF No. ECF No. 27 at p. 3-4; ECF No. 29 and 30), should result in Defendant's Answer and defenses being stricken.

In this regard, stopping short of a full default judgment entry would permit Plaintiffs the opportunity to continue to pursue evidence as it relates to the collective and classes that they seek to certify in advance of the entry of a default judgment and/or other merits sanction.

Finally, regardless of the sanction(s) imposed, the Court should also order Defendant to reimburse Plaintiffs' attorneys' fees and costs as noted herein, consistent with Fed. R. Civ. P. 37(b)(2)(C).

## III. CONCLUSION

WHEREFORE, for the reasons discussed herein, Plaintiffs respectfully request the Court enter an Order (i) imposing sanctions, including but not limited to holding Defendant in contempt, certifying Plaintiffs' proposed collective and classes, striking Defendant's Answer and defenses, and ordering Defendant to compensate Plaintiffs for attorneys' fees and costs incurred to date associated with seeking outstanding discovery through conferrals, filing of Plaintiffs' initial Motion to Compel and preparing and filing the instant Motion; and (ii) awarding any other relief that this Court may deem just and proper.

Respectfully submitted this 14th day of March, 2026, by:

*/s/ Paolo C. Meireles*
Paolo Meireles*
Tamra Givens*
SHAVITZ LAW GROUP, P.A.
622 Banyan Trail, Suite 200
Boca Raton, FL  33431

(561) 447-8888
pmeireles@shavitzlaw.com
tgivens@shavitzlaw.com

Hillary Schwab (BBO# 666029)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3261
hillary@fairworklaw.com

*Pro Hac Vice Admitted

**Attorneys for Plaintiffs and the Putative Collective and Class**

16

## <u>CERTIFICATE OF COMPLAINCE WITH LOCAL RULE 37.1(B)</u>

I certify that in addition to the attempts to resolve this matter via e-mail, as detailed herein, the parties participated in a telephonic conference on March 4, 2026 at 10:00 am ET.  Attorney Paolo C. Meireles participated for Plaintiffs. Attorney Sarah B. Herlihy participated for Defendant. During the conferral, Defendant indicated discovery responses were forthcoming, as detailed herein.  As noted herein, as of the time of this filing, and despite follow-up e-mail correspondence sent by Plaintiffs, Defendant is yet to respond to the outstanding discovery in violation of Federal Rules and this Court's Order, and has not provided any substantive response to Plaintiffs' e-mail correspondence regarding the outstanding discovery.

17

## CERTIFICATE OF SERVICE

I certify that on this date I electronically filed the foregoing document with the clerk of court using the Court's CM/ECF system which will automatically send email notification of such filing to all counsel of record.

Dated: March 14, 2026

*s/ Paolo Meireles*
Paolo Meireles*
Tamra Givens*
SHAVITZ LAW GROUP, P.A.
622 Banyan Trail, Suite 200
Boca Raton, FL  33431
(561) 447-8888
pmeireles@shavitzlaw.com
tgivens@shavitzlaw.com

Hillary Schwab (BBO# 666029)
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3261
hillary@fairworklaw.com

*Pro Hac Vice* Admitted

**Attorneys for Plaintiffs and the Putative Collective and Class**