**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| AIDA PEREZ *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUITY PRIME MORTGAGE, LLC,<br><br>Defendant. | Case No. 1:25-CV-10841-MJJ |

## DECLARATION OF SETH A. KREINER

1.      I, Seth A. Kreiner, make this declaration based on my own personal knowledge and my best recollection and declare under the penalty of perjury that the following is true and correct.

2.      I am an attorney licensed to practice law in Florida, New York, and New Jersey, I am the Co-Founder and Managing Partner of Kreiner Burns.

3.      I routinely represent Equity Prime Mortgage, LLC in a wide range of matters.

4.      The law firm of Shavitz Law Group P.A. ("Shavitz Law") contacted EPM in December 2024 alleging that they represented current and/or former employees of EPM with respect to potential claims of employee misclassification and failure to pay wages consistent with federal and various state laws.

5.      Prior to filing I had numerous discussions with Gregg Shavitz, the founder of Shavtiz Law, regarding the potential for pre-litigation resolution of these alleged claims.

6.      On April 7, 2025 Shavitz Law filed two Complaints on behalf of two purported classes of current and/or former EPM employees asserting the above-described wage claims.  The present action is one of those actions and relates to what is described in the Complaint as the "Loan

Employees" – a broad category that involves individuals who work on functional categories of "Loan Opener" "Loan Processor" and "Loan Closer."  The other action is pending in Georgia and deals with underwriters.

7.      Subsequent to the filing of these Complaints, I engaged in further settlement discussions with Attorney Shavitz and other attorneys at Shavitz Law.

8.      The parties ultimately agreed to mediate the present case with Dennis Clifford, a mediator with offices in Texas and Florida.

9.      During these discussions, Shavitz Law requested information on the number of individuals employed in the roles at issue.  EPM provided this information by email for 2023-2025 for listed job titles, subject to a confidentiality agreement, on June 11, 2025 and included average base salary and bonus information.

10.      I refer to the Declaration of my co-counsel, Sarah Herlihy, regarding pre-mediation discussions and the fact that EPM provided requested information in addition to what I describe above, but made it clear that the information was based on extrapolated data.

11.      The parties were not able to resolve this matter at mediation, but continued settlement discussions thereafter.  While the notion of settling with the individual Plaintiffs who had "opted in" was discussed at several points, every settlement discussion with respect to the class that I was involved with related to settlement of all claims alleged in the Complaint by the entire class, including state law claims that had longer statutes of limitation than the federal claims.

12.      On August 19, 2025, after a call between Ms. Herlihy and Mr. Shavitz, Mr. Shavitz made a proposal to resolve claims of the purported "Loan Employee" class.  This email confirms that the settlement discussions were, at all times, about resolution of the "Loan Employee" class as alleged in the Complaint in its entirety.

13.     I spoke directly with Mr. Shavitz on August 22, 2025.  During that call we agreed to resolve all the claims alleged in this matter as a class settlement for $660,000.00.  There was no discussion on this call about making the settlement contingent on a certain amount of "work weeks."  Nor was there any discussion about settling only a portion of the claims asserted or a portion of the class as defined by the Complaint.  We agreed on all key terms, including the amount of the settlement funds to be allocated to legal fees, that the settlement would be distributed on a reversionary basis, and that we would agree to a transfer of the matter.

14.     We received a term sheet from Mr. Meireles on August 25, 2025.  For the first time, that term sheet made the settlement "contingent" on the class consisting of a certain number of "work weeks."  The number of work weeks referenced by Shavitz Law was <u>different</u> than the estimate that had been given to Shavitz Law pre-mediation on July 24, 2025. This had not been discussed either in individual negotiations I was a part of, or at mediation.  <u>See</u> Herlihy Decl. at <u>Exhibit B</u>.

15.     Shavitz Law agreed on terms <u>after</u> EPM made clear it had only provided an estimate of work weeks that was not based on complete data.  All discussions about resolution, including the final discussion where Mr. Shavitz and I agreed on a final number and fee allocation, discussed resolution of the entire class and all claims asserted in the present matter.

16.     A red-line back to Shavitz Law made some minor edits to non-material terms and deleted the unilaterally introduced contingency.

17.     My co-counsel's Declaration outlines subsequent discussions, but I will reiterate that EPM's position has consistently been that a deal was reached that should be enforced.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 17th DAY OF MARCH 2026.

<u>*/s/ Seth A. Kreiner*</u>
Seth A. Kreiner

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 17, 2026, I served a copy of the foregoing document on counsel for the Plaintiff using the Court's ECF system.

*/s/ Sarah B. Herlihy*
Sarah B. Herlihy