**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AIDA PEREZ *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUITY PRIME MORTGAGE, LLC,<br><br>Defendant. | Case No. 1:25-CV-10841-MJJ |

**DECLARATION OF SARAH B. HERLIHY**

1.      I, Sarah B. Herlihy, make this declaration based on my own personal knowledge and my best recollection and declare under the penalty of perjury that the following is true and correct.

2.      I am an attorney licensed to practice law in Massachusetts and the founder of Herlihy Law LLC.

3.      I represent Equity Prime Mortgage, LLC ("EPM") in this matter, which seeks to certify a class of what is described in the Complaint as the "Loan Employees" – a broad category that involves individuals who work on functional categories of "Loan Opener" "Loan Processor" and "Loan Closer."

4.      The parties agreed to mediate the present case with Dennis Clifford, a mediator with offices in Texas and Florida who specializes in wage and hour class action mediation.

5.      The main wage allegation in this action is that "Loan Employees" were misclassified as exempt instead of non-exempt and worked overtime for which they were not properly paid.  EPM disputes these allegations.

6.    Prior to the mediation, Shavitz Law requested certain information about employees who fall into the "Loan Employee" proposed class.  Attorney Seth Kreiner provided certain of that information in June 2025, as set forth in his Declaration.

7.    Shavitz Law sought additional information regarding the alleged class, specifically the "work weeks."  "Work weeks" is a rough estimate of the total number of weeks worked by a potential "class" of employees using the start and end dates of employment for the potential class members.

8.    A calculation of "work weeks" does not reflect a variety of factors that would impact the amount of overtime allegedly worked even if the allegations are true, including variations amongst employee schedules, vacations, state holidays, leaves of absence, and other factors that impact how much any individual employee works.  Work weeks also does not reflect variations in compensation, which in this case is significant amongst the class.

9.    I had numerous conversations with Paolo Meireles, counsel for the alleged class, sharing that EPM could not readily obtain "work week" information for the entire period alleged in the Complaint prior to the mediation.

10.    I gave detailed information as to why that was the case.  Specifically, the period at issue is 2-6 years depending on the jurisdiction and whether the conduct is found to be "willful" under the FLSA.  During that period of time, EPM used three different payroll systems.  The most recent system was Paycom, which EPM started using as of January 1, 2023.  Prior to the mediation, EPM had the ability to pull data from Paycom for employees employed as of January 1, 2023.  Detailed data was not readily accessible prior to the mediation from the prior two payroll systems used by EPM.

11.    EPM provided the requested work week estimate information on July 24, 2025 using Paycom data.  I made it clear in communicating that information that, because of the payroll system changes, the information readily available to calculate work weeks for the "Loan Employees" prior to

2

the mediation was limited and that the calculation at this point required extrapolation of data for periods prior to 2023 using data from 2023 forward.  I made it clear that I *thought* the weeks may be overstated based on how it was calculated, but noted that the data was "being provided in good faith for settlement purposes only, and without full review of factors that may impact the calculation."  See Exhibit A.

12.     The parties were not able to resolve this matter at mediation, but continued settlement discussions thereafter.  While the notion of settling with the individual Plaintiffs who had "opted in" was discussed at several points, every settlement discussion with respect to the class that I was involved with related to settlement of all claims alleged in the Complaint by the entire class, including state law claims that had longer statutes of limitation than the federal claims.

13.     Several motions to stay were filed, and granted, in this case specifically for the purpose of continuing settlement discussions.

14.     Discussions continued between and amongst myself, Attorney Kreiner, and Attorney Shavitz and Attorney Meireles.

15.     On August 19, 2025, I spoke with Mr. Shavitz about settlement and he subsequently made a proposal to resolve claims that his firm had brought on behalf of the purported "Loan Employee" class.  This email confirms that the settlement discussions were, at all times, about resolution of the "Loan Employee" class in its entirety as alleged in the Complaint.  See Exhibit B.

16.     Attorney Kreiner, as discussed in his Declaration, had a follow-up call with Attorney Shavitz, where they reached agreement as discussed in Attorney Kreiner's Declaration.

17.     At all times during negotiations and leading up to agreement on final terms, Shavitz Law was expressly told that the "work week" data was incomplete.  Knowing that this information was uncertain, Shavitz Law proceeded to finalize the material settlement terms.

18.     We received a term sheet from Mr. Meireles on August 25, 2025.  For the first time, that term sheet made the settlement "contingent" on the class consisting of no  more than a certain number of "work weeks."  The number of work weeks referenced by Shavitz Law was <u>different</u> than the estimate that I had given to Shavitz Law pre-mediation on July 24, 2025. This had not been discussed either in individual negotiations I was a part of, or at mediation.  <u>See</u> <u>Exhibit C</u>.

19.     Shavitz Law agreed on terms <u>after</u> EPM provided information on the number of employees from 2023 forward, average salary and bonus information for that period, and an estimate of work weeks that was clearly stated to be an estimate based on incomplete information, in particular the Paycom data for employees as of January 1, 2023.  All discussions about resolution that I was involved with recognized the nature of the work week data provide and discussed resolution of the entire class and all claims asserted in the present matter.  I repeatedly outlined to Attorney Shavitz the scope of the data used to provide a work weeks estimate, and that it could be incorrect.

20.     A red-line of the term sheet that was sent back to Shavitz Law made some minor edits to non-material terms and deleted the unilaterally introduced contingency term.  <u>See</u> <u>Exhibit D</u>.

21.     I had subsequent discussions with Attorney Meireles.  During all of those discussions, I took the position that we were fully settled and all material terms decided.  For the first time during these discussions, counsel for the purported class attempted to argue that the settlement was contingent on the "work week" number that Shavitz Law had been repeatedly told was an extrapolation based on limited data.  While Attorney Meireles repeatedly tried to "carve" back the claims to be resolved, EPM maintained throughout that there was an enforceable settlement.

22.     After settlement terms were reached and as part of the work to move towards settlement execution, EPM worked to pull data on the potential class of Loan Employees for a broader period of

time and not just for employees from January 1, 2023 forward.  That data reflected a larger number of work weeks.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 17th DAY OF MARCH 2026.

/s/ Sarah B. Herlihy
Sarah B. Herlihy

## CERTIFICATE OF SERVICE

I certify that on March 17, 2026, I served a copy of the foregoing document on counsel for the Plaintiff using the Court's ECF system.

/s/ Sarah B. Herlihy
Sarah B. Herlihy

# EXHIBIT A

| | |
|---|---|
| **From:** | Sarah Herlihy |
| **Sent:** | Thursday, July 24, 2025 2:49 PM |
| **To:** | Paolo Meireles; Seth Kreiner; Thomas J Burns, III |
| **Cc:** | Tamra C. Givens; Gregg Shavitz |
| **Subject:** | RE: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay |

FOR SETTLEMENT PURPOSES ONLY

Paolo:

EPM has reviewed its records for the potential employee categories at issue and the time period. I know Seth has conveyed quite clearly EPM's position on the classification of the underwriters, which is that it has solid legal arguments for its classification of the underwriters as exempt. For that reason, we focused on information for the loan processing employees. These employees encompass a wide range of job responsibilities across the life span from loan origination to close. We doubt that they would be recognized as a unified class.

EPM reviewed information on salary and tenure for this wide range of employees from January 1, 2023 through July 15, 2025. This was the time period for which EPM was able to gather electronic data that could be readily analyzed. The average hourly wage (translating from the base salary) was $26.41. Please note that this number uses the rate of pay as of the date the information was pulled and ignores earlier periods that are a lower rates. This necessarily overstates the hourly rate. The estimated total work weeks for the individuals employed at some point during this time period is approximately 9200. This number is also likely overstated as it likely does not properly exclude all paid time off for which there would be no overtime. Please note that this data is being provided in good faith for settlement purposes only, and without full review of factors that may impact both data points. This data cannot be used in the litigation for any reason.

We don't see any evidence of significant overtime in this group – particularly given that volume in the mortgage market has been steady, with some declines, over this time period.

As you can see, the "best case" scenario we see given your claims, typical opt in rates, and the data we have access to is lower than your settlement demand by many multiples. Hopefully we can get a demand closer to reason prior to mediation



Sarah B. Herlihy
Sherlihy@herlihylawllc.com
(617) 755-3869

---

**From:** Paolo Meireles <pmeireles@shavitzlaw.com>
**Sent:** Tuesday, July 22, 2025 10:01 AM
**To:** Sarah Herlihy <sherlihy@herlihylawllc.com>; Seth Kreiner <seth@kreinerlawfirm.com>; Thomas J Burns, III <tom@kreinerlawfirm.com>
**Cc:** Tamra C. Givens <tgivens@shavitzlaw.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>
**Subject:** RE: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay

Checking in here on timing of weeks information.

Tx.

**Paolo Meireles, Esq.**
SHAVITZ LAW GROUP, P.A.
561-447-8888
www.shavitzlaw.com

The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you.

**From:** Paolo Meireles
**Sent:** Monday, July 21, 2025 10:55 AM
**To:** Sarah Herlihy <sherlihy@herlihylawllc.com>; Seth Kreiner <seth@kreinerlawfirm.com>; Thomas J Burns, III <tom@kreinerlawfirm.com>
**Cc:** Tamra C. Givens <tgivens@shavitzlaw.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>
**Subject:** RE: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay

Following up on the below.  Yes, Liliana Velasquez was formerly known as Liliana Gonzalez.

- Paolo

**Paolo Meireles, Esq.**
SHAVITZ LAW GROUP, P.A.
561-447-8888
www.shavitzlaw.com

The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you.

**From:** Paolo Meireles
**Sent:** Friday, July 18, 2025 9:21 PM
**To:** Sarah Herlihy <sherlihy@herlihylawllc.com>; Seth Kreiner <seth@kreinerlawfirm.com>; Thomas J Burns, III <tom@kreinerlawfirm.com>
**Cc:** Tamra C. Givens <tgivens@shavitzlaw.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>
**Subject:** RE: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay

Sarah, not sure if you've seen the prior mediation submissions we shared with your client, which provided additional detail re: the facts, legal analysis, and exposure (based on the data we had at the time, which is likely to change based on the update data to come)?  Attaching here for your convenience.

Re: Velasquez, we will check with them if she changed her last names.  In the meantime, to assist in tracking her down, we can advise that she worked for the company in NY from approximately 8/2020 through 3/2022.  Re: Degreeff, you can disregard as it appears he was disclosed in error based on a scrivener's error in our client management system.

- Paolo

**Paolo Meireles, Esq.**

SHAVITZ LAW GROUP, P.A.
561-447-8888
www.shavitzlaw.com

The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you.

**From:** Sarah Herlihy <sherlihy@herlihylawllc.com>
**Sent:** Friday, July 18, 2025 3:49 PM
**To:** Paolo Meireles <pmeireles@shavitzlaw.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>; Seth Kreiner <seth@kreinerlawfirm.com>; Thomas J Burns, III <tom@kreinerlawfirm.com>
**Cc:** Tamra C. Givens <tgivens@shavitzlaw.com>
**Subject:** RE: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay

**Shavitz Law**
**Warning:** Sender @sherlihy@herlihylawllc.com is not yet trusted by your organization.
Please be careful before replying or clicking on the URLs.

Report Phishing    Mark Safe

powered by Graphus®

Paolo,

We should have a substantive update for you early next week on the data you requested.  We note that we cannot find data for Nicholas Degreeff or Liliana Velasquez (we do have a Liliana Gonzalez).  Can you confirm the names, dates of employment and state of employment?

In advance of mediation we would also like to review any information your clients have regarding how much overtime they claim to have worked.

Have a good weekend.



Sarah B. Herlihy

Sherlihy@herlihylawllc.com

(617) 755-3869

**From:** Paolo Meireles <pmeireles@shavitzlaw.com>
**Sent:** Wednesday, July 16, 2025 1:45 PM
**To:** Gregg Shavitz <gshavitz@shavitzlaw.com>; Seth Kreiner <seth@kreinerlawfirm.com>; Thomas J Burns, III <tom@kreinerlawfirm.com>; Sarah Herlihy <sherlihy@herlihylawllc.com>
**Cc:** Tamra C. Givens <tgivens@shavitzlaw.com>
**Subject:** RE: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay

Checking in here if news to share?  Mediation is around the corner and we seem to be in the same place data-wise.

Tx.

**Paolo Meireles, Esq.**

SHAVITZ LAW GROUP, P.A.

561-447-8888

www.shavitzlaw.com

The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you.

**From:** Gregg Shavitz <gshavitz@shavitzlaw.com>
**Sent:** Wednesday, July 9, 2025 7:06 AM
**To:** Seth Kreiner <seth@kreinerlawfirm.com>; Thomas J Burns, III <tom@kreinerlawfirm.com>; Sarah Herlihy <sherlihy@herlihylawllc.com>
**Cc:** Paolo Meireles <pmeireles@shavitzlaw.com>; Tamra C. Givens <tgivens@shavitzlaw.com>
**Subject:** RE: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay

Seth, lost track if there was some other data that was being shared or how that was left – I think the work week data specifically we had hoped for - Gregg

**Gregg I. Shavitz, Esq.**

4

SHAVITZ LAW GROUP, P.A.

561-447-8888

www.shavitzlaw.com

The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you.

---

**From:** Seth Kreiner <seth@kreinerlawfirm.com>
**Sent:** Thursday, July 3, 2025 5:07 PM
**To:** Hillary Schwab <hillary@fairworklaw.com>; Thomas J Burns, III <tom@kreinerlawfirm.com>; Sarah Herlihy <sherlihy@herlihylawllc.com>
**Cc:** Paolo Meireles <pmeireles@shavitzlaw.com>; Tamra C. Givens <tgivens@shavitzlaw.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>
**Subject:** RE: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay

Many thanks!

Have a great 4th of July Holiday weekend.

SK

*Seth A. Kreiner, Esq.*

KREINER / BURNS

REMOTE CONTACT 973 454 6768

*PLEASE NOTE OUR NEW ADDRESS*

New Jersey Office

The Monroe Center

720 Monroe Street / Suite E417

Hoboken / New Jersey 07030

(p)(973)467-5511 (f)(973)467-5522

seth@kreinerlawfirm.com


Florida Office

950 Peninsula Corporate Circle/Suite 3001

Boca Raton / Florida / 33487


The information contained in this message is confidential and may be legally privileged. The message is intended solely for the addressee(s). If you are not the intended recipient, you are notified that any use, dissemination, or reproduction is prohibited and may be unlawful. If you are not the intended recipient, please contact the sender by return e-mail and delete all copies of the original.

---

**From:** Hillary Schwab <hillary@fairworklaw.com>
**Sent:** Thursday, July 3, 2025 5:06 PM
**To:** Seth Kreiner <seth@kreinerlawfirm.com>; Thomas J Burns, III <tom@kreinerlawfirm.com>; Sarah Herlihy <sherlihy@herlihylawllc.com>
**Cc:** Paolo Meireles <pmeireles@shavitzlaw.com>; Tamra C. Givens <tgivens@shavitzlaw.com>; Gregg Shavitz <gshavitz@shavitzlaw.com>
**Subject:** FW: Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay


FYI

Hillary Schwab

# FAIRWORKPC

192 South Street, Suite 450

Boston, MA 02111

617.607.3261 (direct)

617.488.2261 (facsimile)

hillary@fairworklaw.com

www.fairworklaw.com


Pronouns:  she/her/hers


---

**From:** ECFnotice@mad.uscourts.gov <ECFnotice@mad.uscourts.gov>
**Date:** Thursday, July 3, 2025 at 10:50 AM
**To:** CourtCopy@mad.uscourts.gov <CourtCopy@mad.uscourts.gov>
**Subject:** Activity in Case 1:25-cv-10841-MJJ Perez et al v. Equity Prime Mortgage, LLC Order on Motion to Stay

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**United States District Court**

**District of Massachusetts**

**Notice of Electronic Filing**


The following transaction was entered on 7/3/2025 at 10:50 AM EDT and filed on 7/3/2025

| | |
|---|---|
| **Case Name:** | Perez et al v. Equity Prime Mortgage, LLC |
| **Case Number:** | 1:25-cv-10841-MJJ |
| **Filer:** | |

**Document Number:** 6(No document attached)

**Docket Text:**
**Judge Myong J. Joun: ELECTRONIC ORDER entered GRANTING [5] Assented to Motion to Stay Case Pending Outcome of Mediation. Case stayed until 8/8/2025. (SKY)**

**1:25-cv-10841-MJJ Notice has been electronically mailed to:**

Hillary A. Schwab     hillary@fairworklaw.com

**1:25-cv-10841-MJJ Notice will not be electronically mailed to:**

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

# EXHIBIT B

| | |
|---|---|
| **From:** | Gregg Shavitz <gshavitz@shavitzlaw.com> |
| **Sent:** | Tuesday, August 19, 2025 4:21 PM |
| **To:** | Sarah Herlihy |
| **Subject:** | RE: Update - for settlement purposes onlyg |

Hi – thx for the call – reviewed it with our team.  Couple ways we can go are:

- b/c the mediator had proposed $500k to $1mil bracket, in essence, everyone has now accepted the bracket, so we can go back to the mediator to work with the parties on just the loan employee position, or
- plaintiffs would go to 900k on the loan employees if Defendant goes to $600, and then it would be our turn again, or if that is not accepted, plaintiffs will drop down to $950k

thx- Gregg

**Gregg I. Shavitz, Esq.**
SHAVITZ LAW GROUP, P.A.
561-447-8888
www.shavitzlaw.com
The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you.

**From:** Sarah Herlihy <sherlihy@herlihylawllc.com>
**Sent:** Tuesday, August 19, 2025 3:39 PM
**To:** Gregg Shavitz <gshavitz@shavitzlaw.com>
**Subject:** Re: Update

On a 3:30 call but if it wraps up will call at 4:00

Get Outlook for iOS

**From:** Gregg Shavitz <gshavitz@shavitzlaw.com>
**Sent:** Tuesday, August 19, 2025 3:38:22 PM
**To:** Sarah Herlihy <sherlihy@herlihylawllc.com>
**Subject:** RE: Update

Yes, and 4pm is better if you can do 4pm

**Gregg I. Shavitz, Esq.**
SHAVITZ LAW GROUP, P.A.
561-447-8888

1

# EXHIBIT C

## SETTLEMENT TERM SHEET

1. This is an opt-in claims-made reversionary settlement, to resolve the claims alleged in *Perez, et al. v. Equity Prime Mortgage, LLC*, No. 1:25-cv-10841 (D. Mass.).  The parties agree that within seven (7) days of the full execution of this Settlement Term Sheet, the Plaintiffs in *Perez* shall file a Fed. R. Civ. P. 41 Notice of Dismissal Without Prejudice, to permit the parties to refile this matter in an agreed upon jurisdiction for settlement approval purposes only, as otherwise discussed herein.

2. The Gross Fund is $660,000.00, assuming the number of workweeks covered is not more than 10,889, as identified prior to resolution of this matter.  To the extent the number of workweeks total more than 10,889, Defendant shall pay a proportional increase to the Gross Fund for each such week calculated as $660,000 / 10,889 x additional weeks above 10,889.

3. The Gross Fund covers and includes all state and federal Wage and Hour claims of all Putative Collective Members and all attorneys' fees and expenses of Plaintiffs' counsel, general release payments, and the expenses of the settlement administrator.  "Putative Collective Members" is defined to be all overtime-wage exempt classified Broker Success Analysts; Broker Success Analyst Wholesales; Broker Success Support Analyst Wholesales; Closers; Collateral Document Specialists; Collateral Document Team Leads; Correspondent Loan Advisors; Delegated Correspondent Specialists; Funders; Government Insuring Specialists; Insuring Specialists; Account Managers; Loan Reviewers; Post Closing Team Leads; Renovation Specialists; Retail Client Experience Specialists; Retail Closers; Retail Disclosure Specialists; Retail MLO Supports Retail Processors; Retail Processor Supports Retail Reviews; SEC Fulfillment Team Leads; SEC Fulfilment Doc Specialists; Senior Loan Delivery Specialists; Sr Government Insuring Specialists; TPO Administrators Wholesale; TPO Disclosure Desk Admins Wholesale; TPO Production Wholesale; Trailing Doc Specialists; Wholesale Closers; and/or Wholesale Closing Team Leads (collectively, "Loan Employees"), employed by Equity Prime Mortgage, LLC Inc. ("Equity Prime" or "Defendant") in the United States at any time from June 30, 2022 through execution of this Settlement Term Sheet (the "Relevant Period").  The Relevant Period shall also include all time worked by Marlene Evans; Heston Gee; Kenneth J Jackson Jr.; Betsaida Jarvis; Lynn Johnson; Sharon Matthews; Aida Perez; Blanca Reynoso; Dayanara Velasquez; and Liliana Velasquez as Loan Employees for Defendant.

4. The Gross Fund shall be paid to a Qualified Settlement Fund established by the Settlement Administrator on or before seven (7) days after the Court's approval of the settlement has become a final non-appealable order.

5. The Settlement Administrator will be selected by Plaintiffs' counsel subject to Defendant's approval.

6. Putative Collective Members who timely opt into this settlement shall be paid a portion of the Net Fund (Net Fund = Gross Fund less court-approved Plaintiffs' attorney's fees and expenses, general release payment and administration expenses) determined primarily by weeks worked in the Relevant Period while employed as Loan Employees.

7. Notice to the Putative Collective Members will be made by e-mail and First Class U.S. Mail with an enclosed, postage-paid return envelope within twenty-one (21) days of the Court's approval of the settlement becoming a final non-appealable order and will advise the Putative Collective

1

Member of their estimated pro rata settlement amount.  Any Notices returned undeliverable shall be traced up to two times to obtain a new address and be re-mailed by First Class U.S. Mail. Putative Collective Members shall have sixty (60) days from the date of mailing to submit their completed claim forms, which must be either postmarked by, or e-mailed or facsimiled and received on or before the 60th day ("Opt-in Period").  To the extent any mailed Notice is returned as undeliverable, such person shall be permitted thirty (30) days from any re-mailing of the Notice to submit their claim form ("Re-mailing Opt-in Period").  The Settlement Administrator will also send out reminder postcards via e-mail and First Class U.S. Mail thirty (30) days after the initial mailing of the Notice.  Payment to participating Putative Collective Members will be made within twenty-one (21) days of the close of the Opt-in Period or Re-Mailing Opt-in Period, whichever is later.

8.  The Settlement Administrator shall allocate fifty percent (50%) of the total paid to each member who opts into the settlement to wages (W-2) and 50% to non-wage compensation (1099). Defendant's share of payroll taxes shall not come out of the Gross Fund.  Rather, Defendant's share of payroll taxes shall be paid by Defendant in addition to the sum of the Gross Fund.

9.  Putative Collective Members who opt into this settlement shall release any and all wage and hour claims that accrued during their employment as overtime-wage exempt classified Loan Employees while employed by Equity Prime relating back to the full extent of the Relevant Period, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for interest, liquidated damages, attorneys' fees, costs, and expenses.

10.  The parties agree that Plaintiffs' counsel may seek up to, and Defendant will not oppose, forty percent (40%) of the Gross Fund as fees, plus reasonable out-of-pocket costs and expenses.  The settlement is not conditioned upon the Court's approval of Plaintiffs' counsels' petition for fees and costs.  Payment to Plaintiffs' counsel from the Gross Fund shall be made fourteen (14) days after the Court's approval of the settlement has become a final non-appealable order.

11.  From the Gross Fund, the parties agree that general release payments totaling Twenty-Five Thousand Dollars ($25,000.00) will be divided among Kenneth J Jackson Jr.; Betsaida Jarvis; Aida Perez; Blanca Reynoso; Liliana Velasquez; and Dayanara Velasquez (together, "General Release Payment Recipients") at Plaintiffs' counsel's discretion, and paid to General Release Payment Recipients, all subject to Court approval.  Any general release payment approved by the Court shall be paid fourteen (14) days after the Court's approval of the settlement has become a final non-appealable order.  A general release will be provided by the General Release Payment Recipients in exchange for receiving and accepting their general release payments.

12.  Any portion of the Gross Fund not distributed as per the terms hereof shall revert to Defendant. In addition, after the expiration of 120 days following issuance of checks to any participating Putative Collective Members, any check not cashed shall become a part of the reversion to Defendant.  The Settlement Administrator will send out reminder postcards via e-mail and First Class U.S. Mail within sixty (60) days after the initial distribution of checks to participating Putative Collective Members reminding them to negotiate their checks prior to the 120 day deadline.

13.  Within two weeks of the execution of this Settlement Term Sheet, Plaintiffs' counsel shall prepare and send to Defendant's counsel a draft settlement agreement incorporating these terms.

2

14. This settlement is contingent upon approval, and the parties will file this action and seek approval in state Court in Florida in either Orange, Broward, or Miami-Dade counties, at Plaintiffs' counsel's selection.

15. The parties agree the complaint and settlement approval papers shall be filed on or before four weeks after execution of this Settlement Term Sheet.

16. To the extent the D. Mass. Court in *Perez* does not immediately accept the Plaintiffs' Fed. R. Civ. P. 41 Notice of Dismissal Without Prejudice, all deadlines in this Settlement Term Sheet shall be stayed pending the Court's acceptance of same, unless otherwise mutually agreed by the parties. To the extent the D. Mass. Court in *Perez* ultimately rejects Plaintiffs' Fed. R. Civ. P. 41 Notice of Dismissal and/or any appeals regarding same, if pursued, are likewise denied, the terms in this Settlement Term Sheet shall remain in effect, however, the parties will first discuss in good faith whether to seek approval before the D. Mass. Court or other, alternative methods.

**Dated: _____**

**Counsel for Plaintiffs**                      **Counsel for Defendant**

_____              _____

3

www.shavitzlaw.com

The information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including attachments) is strictly prohibited. If you have received this e-mail in error, please notify the sender by reply e-mail or call (561) 447-8888. Thank you.

**From:** Sarah Herlihy <sherlihy@herlihylawllc.com>
**Sent:** Tuesday, August 19, 2025 3:35 PM
**To:** Gregg Shavitz <gshavitz@shavitzlaw.com>
**Subject:** Update


Do you have time to talk after 4:30?



Sarah B. Herlihy
Sherlihy@herlihylawllc.com
(617) 755-3869


This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com


This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com


This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com


This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

2

# EXHIBIT D

**SETTLEMENT TERM SHEET**

1. This is an opt-in claims-made reversionary settlement, to resolve the claims alleged in *Perez, et al. v. Equity Prime Mortgage, LLC*, No. 1:25-cv-10841 (D. Mass.). The parties agree that within seven (7) days of the full execution of this Settlement Term Sheet, the Plaintiffs in *Perez* shall file a Fed. R. Civ. P. 41 Notice of Dismissal Without Prejudice, to permit the parties to refile this matter in an agreed upon jurisdiction for settlement approval purposes only, as otherwise discussed herein.

2. The Gross Fund is $660,000.00. ~~, assuming the number of workweeks covered is not more than 10,889, as identified prior to resolution of this matter. To the extent the number of workweeks total more than 10,889, Defendant shall pay a proportional increase to the Gross Fund for each such week calculated as $660,000 / 10,889 x additional weeks above 10,889.~~

3. The Gross Fund covers and includes all state and federal Wage and Hour claims of all Putative Collective Members and all attorneys' fees and expenses of Plaintiffs' counsel, general release payments, and the expenses of the settlement administrator. "Putative Collective Members" is defined to be all overtime-wage exempt classified Broker Success Analysts; Broker Success Analyst Wholesales; Broker Success Support Analyst Wholesales; Closers; Collateral Document Specialists; Collateral Document Team Leads; Correspondent Loan Advisors; Delegated Correspondent Specialists; Funders; Government Insuring Specialists; Insuring Specialists; Account Managers; Loan Reviewers; Post Closing Specialist; Post Closing Team Leads; Renovation Specialists; Retail Client Experience Specialists; Retail Closers; Retail Disclosure Specialists; Retail MLO Supports Retail Processors; Retail Processor Supports Retail Reviews; SEC Fulfillment Team Leads; SEC Fulfilment Doc Specialists; Final Doc Specialist; Senior Loan Delivery Specialists; Sr Government Insuring Specialists; TPO Administrators Wholesale; TPO Disclosure Desk Admins Wholesale; Disclosure Desk; FHA Specialist; Pipeline Support Specialist, Account Manager Team Lead; Account Executive; Junior Account Executive; TPO Production Wholesale; Trailing Doc Specialists; Wholesale Closers; and/or Wholesale Closing Team Leads; (collectively, "Loan Employees"), employed by Equity Prime Mortgage, LLC Inc. ("Equity Prime" or "Defendant") in the United States at any time from June 30, 2022 through execution of this Settlement Term Sheet or any longer period as provided by relevant state statute so as to encompass all potential claims under relevant statutes of limitation for unpaid overtime wages (the "Relevant Period"). The Relevant Period shall also include all time worked by Marlene Evans; Heston Gee; Kenneth J Jackson Jr.; Betsaida Jarvis; Lynn Johnson; Sharon Matthews; Aida Perez; Blanca Reynoso; Dayanara Velasquez; and Liliana Velasquez as Loan Employees for Defendant.

4. The Gross Fund shall be paid to a Qualified Settlement Fund established by the Settlement Administrator ~~on or before seven (7) days~~ after the Court's approval of the settlement has become a final non-appealable order and as needed to timely fund payment of authorized amounts from the Settlement Fund.

> **Commented [SH1]:** There is an understandable reluctance to put this much cash in an account when the claims process will take some time.

1

5. The Settlement Administrator will be mutually selected by counsel for Plaintiffs and Defendants, with a third party neutral from JAMS to select a Settlement Administrator if the parties cannot agree.  Plaintiffs' counsel subject to Defendant's approval.  **Costs related?**

6. Putative Collective Members who timely opt into this settlement shall be paid a portion of the Net Fund (Net Fund = Gross Fund less court-approved Plaintiffs' attorney's fees and expenses, general release payment and administration expenses) determined primarily by weeks worked and hourly rate in the Relevant Period while employed as Loan Employees.

7. Notice to the Putative Collective Members will be made by e-mail and First Class U.S. Mail with an enclosed, postage-paid return envelope within twenty-one (21) days of the Court's approval of the settlement becoming a final non-appealable order and will advise the Putative Collective Member of their estimated pro rata settlement amount.  –Any Notices returned undeliverable shall be traced up to two times to obtain a new address and be re-mailed by First Class U.S. Mail.  Putative Collective Members shall have sixty (60) days from the date of mailing to submit their completed claim forms, which must be either postmarked by, or e-mailed or facsimiled and received on or before the 60th day ("Opt-in Period").  To the extent any mailed Notice is returned as undeliverable, such person shall be permitted thirty (30) days from any re-mailing of the Notice to submit their claim form ("Re-mailing Opt-in Period").  The Settlement Administrator will also send out reminder postcards via e-mail and First Class U.S. Mail thirty (30) days after the initial mailing of the Notice.  Payment to participating Putative Collective Members will be made within twenty-one (21) days of the close of the Opt-in Period or Re-Mailing Opt-in Period, whichever is later.

> **Commented [SH2]:** No one is going to monitor a fax.

8. The Settlement Administrator shall allocate fifty percent (50%) of the total paid to each member who opts into the settlement to wages (W-2) and 50% to non-wage compensation (1099).  Defendant's share of payroll taxes shall not come out of the Gross Fund.  Rather, Defendant's share of payroll taxes shall be paid by Defendant in addition to the sum of the Gross Fund.

> **Commented [SH3]:** What 1099 designation?

9. Putative Collective Members who opt into this settlement shall release any and all wage and hour claims that accrued during their employment as overtime-wage exempt classified Loan Employees while employed by Equity Prime relating back to the full extent of the Relevant Period, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for interest, liquidated damages, attorneys' fees, costs, and expenses.

10. The parties agree that Plaintiffs' counsel may seek up to, and Defendant will not oppose, forty percent (40%) of the Gross Fund as fees, plus reasonable out-of-pocket costs and expenses.  The settlement is not conditioned upon the Court's approval of Plaintiffs' counsels' petition for fees and costs.  Payment to Plaintiffs' counsel from the Gross Fund shall be made fourteen (14) days after the Court's approval of the settlement has become a final non-appealable order.

11. From the Gross Fund, the parties agree that general release payments totaling Twenty-Five Thousand Dollars ($25,000.00) will be divided among Kenneth J Jackson Jr.; Betsaida Jarvis; Aida Perez; Blanca Reynoso; Liliana Velasquez; and Dayanara Velasquez (together,

"General Release Payment Recipients") at Plaintiffs' counsel's discretion, and paid to General Release Payment Recipients, all subject to Court approval.  Any general release payment approved by the Court shall be paid fourteen (14) days after the Court's approval of the settlement has become a final non-appealable order.  A general release will be provided by the General Release Payment Recipients in exchange for receiving and accepting their general release payments.

12. Any portion of the Gross Fund not distributed as per the terms hereof shall revert to Defendant.  In addition, after the expiration of 120 days following issuance of checks to any participating Putative Collective Members, any check not cashed shall become a part of the reversion to Defendant.  The Settlement Administrator will send out reminder postcards via e-mail and First Class U.S. Mail within sixty (60) days after the initial distribution of checks to participating Putative Collective Members reminding them to negotiate their checks prior to the 120 day deadline.

13. Within two weeks of the execution of this Settlement Term Sheet, Plaintiffs' counsel shall prepare and send to Defendant's counsel a draft settlement agreement incorporating these terms.

14. This settlement is contingent upon approval, and the parties will file this action and seek approval in state a mutually agreed forum. Court in Florida in either Orange, Broward, or Miami-Dade counties, at Plaintiffs' counsel's selection.

> **Commented [SH4]:** We have some concerns about Florida but are continuing our due diligence

15. The parties agree the complaint and settlement approval papers shall be filed on or before four weeks after execution of this Settlement Term Sheet.

16. To the extent the D. Mass. Court in *Perez* does not immediately accept the Plaintiffs' Fed. R. Civ. P. 41 Notice of Dismissal Without Prejudice, all deadlines in this Settlement Term Sheet shall be stayed pending the Court's acceptance of same, unless otherwise mutually agreed by the parties. To the extent the D. Mass. Court in *Perez* ultimately rejects Plaintiffs' Fed. R. Civ. P. 41 Notice of Dismissal and/or any appeals regarding same, if pursued, are likewise denied, the terms in this Settlement Term Sheet shall remain in effect, however, the parties will first discuss in good faith whether to seek approval before the D. Mass. Court or other, alternative methods.

**Dated: _____**

**Counsel for Plaintiffs**                                **Counsel for Defendant**

_____                    _____

3